[Civ. No. 688.    Third Appellate District.—December 31, 1909.]

# FIRST NATIONAL BANK OF AUBURN, Plaintiff, Petitioner, v. THE SUPERIOR COURT OF LASSEN COUNTY, and Hon. H. D. BURROUGHS, Judge of Said Court, Defendants, Respondents.

RECEIVERS—ILLEGAL APPOINTMENT—SEASONABLE REMEDY BY WRIT OF REVIEW.—Receivers cannot be legally appointed in an action at law, or in any case not sanctioned by section 564 of the Code of Civil Procedure; and receivers in such action cannot be made lawful by mere averments of large indebtedness and insolvency of the defendant, nor by consent of parties interested. Upon application within a reasonable time, such appointment would be annulled upon writ of review.

ID.—PROHIBITION—WRIT OF RIGHT—SEASONABLE REMEDY—IRREPARABLE AND CONTINUING INJURY—ABSENCE OF LEGAL REMEDY.—Under circumstances where irreparable and continuing injury is resulting from the unauthorized appointment of a receiver, and there is no plain, speedy or adequate remedy at law, and the writ of prohibition is sought seasonably, the court should not regard itself as clothed with discretion, but should treat prohibition as a writ of right.

ID.—ACQUIESCENCE AND LONG DELAY — GOOD FAITH OF RECEIVERS — LARGE PRO RATA—WRIT GIVING UNJUST PREFERENCE REFUSED.—When the petitioner for the writ of prohibition knew of the appointment of the receivers before they entered upon their duties, and that other creditors had consented thereto, and had manifested acquiescence and long delay for a year before objecting thereto, and it appears that the receivers had acted in good faith, and had carried on the business successfully, with the result that, after paying laborers in full, a large *pro rata* was earned for all creditors, the petition of a judgment creditor for the writ to restrain the court in which the receivers were appointed from preventing the levy upon and sale of property in the custody of the receivers, in order to obtain an unjust preference, will be refused.

ID.—UNCONSCIONABLE REMEDY—SACRIFICE OF PROPERTY.—To annul the receivership as void, after the lapse of time of unquestioned administration, for the sole purpose of enabling plaintiff by his executions to take and sell the remaining property to a sacrifice of its real value, would be unconscionable.

ID.—BANKRUPTCY—WRECK OF ASSETS.—The probable result of such remedy would be a proceeding in bankruptcy, which would be followed by a receivership, no more promising, and the wreck of the debtor's assets may be conceived as the ultimate outcome.

Id.—Writ of Prohibition—Nature and Office—Injustice or Reckless Waste not Permissible.—The writ of prohibition is classed among legal remedies, but there are points of similarity between the remedy thus afforded and the remedy by injunction against proceedings at law. Being an extraordinary remedy, the writ should not be made the instrument of injustice or oppression or reckless waste of property, which it is its office to conserve and protect.

Id.—Remedy of Creditor by Intervention and Appeal from Order Appointing Receiver.—The creditor had an adequate remedy at law, by intervening seasonably in the action, when the receivers were applied for or when they were appointed, thus being in a position to appeal from the order appointing a receiver.

Id.—Implied Consent of Plaintiff—Applicable Maxim of Equity.— Where it seems that all other creditors than plaintiff virtually came into the proceedings, and plaintiff, by its consent and acquiescence, placed itself in like attitude for almost a year, until after much business had been transacted and little remained to be done, when plaintiff seeks to ignore its long acquiescence, and to destroy equality and accomplish partiality by the overthrow of everything done on reliance of its implied consent, it seems that the maxim, "He who seeks equity must do equity" is applicable.

Id.—Contempt of Appellate Court—Brief Containing Disrespectful and Contemptuous Reference to Superior Judge.— A brief upon appeal containing disrespectful and contemptuous reference to and insinuations against the superior court and the judge thereof is a contempt of the appellate court.

Id.—Oath of Attorney—Duty to Maintain Respect Due to Courts and Judicial Officers.—Upon his admission to the bar every attorney is required by law to take an oath to "faithfully discharge the duties of an attorney and counselor," and among such duties the statute prescribes "to maintain the respect due to the courts of justice and judicial officers."

PETITION for a writ of prohibition to restrain the Superior Court of Lassen County from nullifying and preventing the levy of an execution issued out of the Superior Court of Placer County upon property in the hands of receivers appointed by the former court.

The facts are stated in the opinion of the court.

J. D. Meredith, and J. B. Landis, for Petitioner.

Pardee & Pardee, for Respondents.

Cheney, Massey & Price, *Amici Curiae.*

CHIPMAN, P. J.—Prohibition.  Plaintiff seeks the writ of this court restraining defendant from obstructing or nullifying the levy of execution issued out of the superior court of Placer county in an action entitled, The First National Bank of Auburn, plaintiff, v. A. Shadboldt and E. L. Morse, copartners, defendants, upon the property of said defendant last named situated in Lassen county, or from a sale thereunder, or from any proceedings under said execution; also that the order of said court commanding the release of the levy of said execution, and forbidding the sale of any of said defendant's property, be vacated and set aside.

It is set forth in the petition that plaintiff obtained judgment against said Shadboldt & Morse, in the superior court of Placer county, for the sum of $711.50, on June 28, 1909, and on September 28, 1909, execution duly issued out of said court, directed to the sheriff of Lassen county, commanding him to satisfy said judgment out of the property of the defendants in said Lassen county; that thereafter, to wit, on October 20, 1909, the said sheriff levied said execution upon the property named therein in accordance with instructions given him and gave notice that he would sell said property on October 29, 1909.  It appears further that, prior to the commencement of said action by plaintiff, to wit, on November 27, 1908, one T. P. Crowder commenced an action in the superior court of Lassen county against the said Shadboldt & Morse for merchandise sold and delivered and for money loaned, amounting in all to $672; that in the complaint in said action, as ground for the appointment of a receiver therein, it was alleged as follows:

"3. That said defendants are also largely indebted to numerous other persons, including a large number of laborers, on account of labor done and supplies furnished.  That the claims of said laborers are all now due and payable, and the claims of nearly all other creditors are also past due. That the said defendants are the owners of a large quantity of lumber; and also own certain accounts against divers and sundry persons and corporations for lumber sold and delivered.  That the lumber owned by the defendants is not in condition to be marketed at present, nor is there an immediate market for the same at a fair price.  That the out-

12 Cal. App.—22

standing accounts owned by defendants for lumber sold are not yet due and collectible. That said defendants are not able at this time to pay and discharge their said indebtedness, nor are they able to carry on their business and meet their said obligations within a reasonable time. That various of their creditors, particularly the laborers, are in need of the moneys due to them; and it is probable that if some provision is not made for their payment liens will be filed and suits instituted by said laborers, and other creditors will be forced to bring actions for the sums due them; that a multiplicity of suits will result, and the assets of defendants will be wasted and the proceeds dissipated in costs and expenses of litigation. That it is for the best interests of all the parties in interest and of all the creditors of said defendants. that the said business and property should be placed in the hands and under the control of some competent person or persons to act as receivers or receiver, to take charge of said business and manage the same, and to convert the assets of said defendants into money and pay and discharge the claims of all creditors ratably and in conformity with the provisions of law.

"4. That all of the persons having claims against said defendants for labor and services performed and rendered have agreed in writing that they will waive all their rights to file liens against the lumber belonging to said defendants, and assent to the appointment of O. M. Doyle and T. P. Crowder as receivers for said 'Long Valley Sawmill Co.' That it is the expressed desire of nearly all other creditors of defendants that said persons act as receivers in said matter. That said O. M. Doyle and T. P. Crowder are experienced in the sawmill business, having heretofore been engaged successfully in said business in Long Valley as the owners of the mill and plant now owned by defendants. That the defendants have signified in writing their consent that said O. M. Doyle and T. P. Crowder be appointed as such receivers and this plaintiff hereby consents to such appointment"; and praying that O. M. Doyle and T. P. Crowder, plaintiff in said action, be appointed receivers therein, "with all the powers given to receivers by statute and the usual course and procedure of courts in equity, and that said receivers be required to apply all the moneys which shall come to their hands as such to the payment of legal claims against said defendants, ratably,

and in accordance with law, giving preference to creditors whose claims are by law preferred." On the same day, to wit, November 27, 1908, the court made the following order:

"In the Superior Court, County of Lassen, State of California.

"T. P. Crowder, Plaintiff,

vs.

Alexander Shadboldt and Edward L. Morse, Copartners Doing Business Under the Firm Name and Style of the Long Valley Sawmill Co., Defendants.

"In the above-entitled action the plaintiff having made application to me as judge of said superior court for the appointment of O. M. Doyle and T. P. Crowder as receivers in said action; and it appearing to me from the verified complaint herein, and by other evidence, competent and relevant, submitted in support of said application:

"That plaintiff is a creditor of defendants, and that said action is brought to recover judgment against said defendants for the amount of said indebtedness, and to subject the property of defendants to the payment thereof;

"That said property of said defendants is in danger of being dissipated and lost;

"That it is for the best interests of the parties to this action and of all the creditors of said defendants that a receiver or receivers should be appointed to take charge of the business and property of defendants;

"That said O. M. Doyle and T. P. Crowder are fit and proper persons to be appointed such receivers; and

"That the consent in writing of the parties to this action for the appointment of said persons as such receivers has been filed with the clerk of this court;

"Now, therefore, it is hereby ordered that O. M. Doyle and T. P. Crowder be, and they are hereby appointed receivers in this action, to take charge of all the property of said defendants, upon their taking the proper oath and executing an undertaking according to law, in the sum of two thousand five hundred dollars to the said defendants and the creditors of said defendants.

"Dated this 27th day of November, 1908.

"F. A. KELLEY, Judge."

The receivers duly qualified on December 10, 1908, and entered upon the discharge of their duties as such, took pos-

session of all the property of said defendants and have ever since retained and now have exclusive possession thereof. It is further alleged that said action, in which said receivers were appointed, has never been brought to trial and that petitioner "did not at any time consent to ratifying or approving the appointment of said receivers." It is further shown that petitioner, on September 24, 1909, applied by motion in said superior court of Lassen county for an order vacating its order appointing said receivers, "upon the ground that the said court had no jurisdiction to appoint said receivers and also for an order discharging said receivers and for other relief." Said motion was noticed to be heard on all the papers and records in the said action brought in Placer county and the records in the case in which the receivers were appointed and upon the affidavit of G. W. Brundage, cashier of the Auburn bank, petitioner here. In addition to facts already set forth affiant deposes that neither the firm of Shadboldt & Morse nor the members individually have any property except that in Lassen county now in possession of the receivers; that they are solvent and their assets exceed their liabilities by more than $3,000, and avers that the receivers are not managing the business to the best advantage of the creditors of said Shadboldt & Morse, but not specifying wherein there has been any failure of duty. It is then set forth that the Auburn bank, on July 6, 1909, obtained a judgment of foreclosure of a chattel mortgage against Shadboldt & Morse in the Lassen county court, for the sum of $2,000; that the mortgaged property was sold under execution pursuant to said judgment for $500 and a deficiency judgment docketed for the sum of $1,903.49, and no part of said last-named sum has been paid and is unsecured.

It appears from the answer of defendant that there was another motion made by the Auburn bank and heard at the same time as the motion last above mentioned, to wit, a motion for an order directing execution to issue out of the Lassen county court and directing the sheriff to levy upon the property of Shadboldt & Morse sufficient to satisfy the said judgment obtained in Placer county and the said deficiency judgment. The hearing of both said motions was reopened, on motion of the receivers, to permit them to offer further evidence in resistance thereof. This order of the court was made October 29, 1909, and said motions of peti-

tioner in said matter have not been set down for hearing, for the reason, as is averred by respondent, that the alternative writ in this proceeding was served upon him a few days thereafter, to wit, November 2d, and as it involves a question of jurisdiction, also involved in said motions, it was deemed best to await the decision of this court. It further appears from the petition herein that upon motion of the receivers, after notice and hearing, to wit, on October 28, 1909, the defendant, respondent herein, made an order directing the sheriff to release the property levied upon by him on said Placer county execution and restraining him from levying upon said property or to sell the same or to execute any execution thereon.

Among the facts not already appearing, the answer sets forth the following: That the Auburn bank is not, and never was, a party to the action in which receivers were appointed, but that it had actual notice and knowledge of the pendency of said action ''shortly after the twenty-seventh day of November, 1908,'' the date of the order appointing the receivers; that on the day of the hearing of the citation above mentioned, to wit, on October 28, 1909, directing the sheriff to release the levy made under petitioner's said judgment, the said receivers offered to ''deposit with the court a sum of money sufficient to cover the full amount due to said bank under the judgment upon which said execution was issued; said amount to be held by the court as a special fund out of which the amount of said judgment shall be paid in full in case it shall finally be determined that said bank is entitled thereto,'' but said offer was rejected by counsel for the Auburn bank; that the court nevertheless made such order and on October 29, 1909, said receivers made such deposit. It further appears that the Auburn bank obtained judgment in the Lassen county superior court for the foreclosure of its mortgage on certain personal property of Shadboldt & Morse, July 6, 1909, for the sum of $2,000, and on that day took out an ordinary execution and placed the same in the hands of the sheriff, who levied said execution upon the property embraced in the mortgage and sold the same, the bank becoming the purchasers thereof, for the sum of $500, and that thereafter, to wit, October 4, 1909, the bank procured the issuance of an order of sale in said foreclosure action and

placed the same in the hands of the sheriff, who, on the third day of November, 1909, reported the sale of the same property, the bank becoming the purchaser, for the sum of $2,496. The return of the sheriff states: "Although the said party, the First National Bank of Auburn, took possession of the said property and allowed it to be removed from the place of sale, they refuse to pay the amount bid and claim that they hold a previous sale as the legal sale." It is further shown in the answer that between the dates of the two said sales the bank sold the said property for $2,500; that the bank, on September 30, 1909, caused an execution to issue on the deficiency judgment entered after the first sale, for $1,903.49, and placed the same in the hands of the sheriff, and that, since the said resale of said property, has given directions to levy the same upon the sum of $800 deposited as aforesaid with the court, and said sheriff, on November 2, 1909, attempted to make such levy. It is also set forth that since *their said* appointment the receivers have, "under the direction of the court, taken charge of and conducted and carried on the business of the said defendants Shadboldt & Morse; have collected many outstanding accounts; have sold and converted into money considerable quantities of lumber; by authority of said court have paid all preferred labor claims; and under like authority have manufactured a large quantity of lumber, a considerable portion of which was manufactured to fill special orders, and has been sold and disposed of, but some of which remains on hand and is of good merchantable quality." Further answer is made showing faithful performance of duty by the receivers; that they have advanced money which has not been repaid and that they have received no compensation thus far; that a considerable quantity of lumber is now piled at the track of the Western Pacific Railroad Company, which can soon be moved to market and sold at fair value; "that if said receivers are permitted to continue to manage the business of said Shadboldt & Morse, they will, in a short time, be able to dispose of all the property now in their hands at a price proportionate to its actual value, and from the proceeds thereof pay ratably to the creditors of said defendants a large percentage, if not the entire amount, of their several claims. But defendant believes that if the petitioner herein is permitted to satisfy its alleged claims in full

out of the property of said defendants by forced sale, there will be comparatively little, perhaps nothing, left for other creditors. Wherefore, defendant says that it is neither just, fair nor equitable that said petitioner should be permitted to levy said executions, or either of them, upon any of the property in the hands of said receivers, but that in good conscience the petitioner should be paid ratably with other creditors. And that therefore the writ of prohibition prayed for ought not to be granted. It may be stated that the judge appointing the receivers is not the present judge of the Lassen county superior court.

We have set forth the facts very fully, for the reason that it is only through their just consideration that we are able to reach what appears to us to be a satisfactory conclusion. The only ground upon which the appointment could have originally rested is that the action of *Crowder* v. *Shadboldt & Morse* was one in which "receivers have heretofore been appointed by the usages of courts of equity." (Code Civ. Proc., sec. 564, subd. 6.) It was said in *San Jose Bank of Savings* v. *Bank of Madera,* 121 Cal. 543, [54 Pac. 83, 270] : "In such a case, involving merely legal as distinguished from equitable rights, the law does not authorize the appointment of a receiver." (Citing *Bateman* v. *Superior Court,* 54 Cal. 285; *Scott* v. *Sierra Lumber Co.,* 67 Cal. 76, [7 Pac. 131].) In *Smith* v. *Superior Court,* 97 Cal. 348, [32 Pac. 322], an action was brought against a railroad company upon its unsecured promissory notes, and the court held the action to be essentially one at law, and is not changed into a suit in equity, in which a receiver may be appointed, merely because the complaint contains allegations to the effect that the company is insolvent and that other creditors are threatening to sue it, and that it has no property out of which the plaintiff will be able to satisfy any judgment it may obtain, and that the action is brought in behalf of the plaintiff and all other creditors of the company who are willing to come in as plaintiffs. The court held that the appointment of a receiver in such a case is unauthorized and void, and will be annulled on *certiorari* if the proceedings are commenced in due time.

In *Bateman* v. *Superior Court,* 54 Cal. 288, which was an action in ejectment, the court said that "if it had been in-

tended to confer the power to appoint an officer of that character (a receiver) in an action at law for the recovery of the possession of real property, it is not credible that the legislature would not have said so in terms, since it is apparent that it was their purpose to specify all cases whether at law or equity in which receivers could be appointed.'' We must look alone to section 564, Code of Civil Procedure, for authority to appoint a receiver. (*French Bank Case,* 53 Cal. 495; *White* v. *White,* 130 Cal. 597, [80 Am. St. Rep. 150, 62 Pac. 1062].) Where the court has no authority to appoint a receiver, such authority cannot be conferred by consent or stipulation of the parties. (*Baker* v. *Varney,* 129 Cal. 564, [79 Am. St. Rep. 140, 62 Pac. 100]. See, also, *Scott* v. *Hotchkiss,* 115 Cal. 89, [47 Pac. 45].)

If the question had properly come to us at the inception of the proceedings, we should have felt compelled to hold the appointment unauthorized. But there is something more to the case as it now stands than the naked question of power to make the appointment originally. The question now is, Must we, under the circumstances disclosed, order a revocation of the appointment regardless of the probable disastrous consequences to all the other creditors, that petitioner may be preferred to them and be made secure against possible loss? Must we wholly ignore what has happened since the appointment to seriously affect the relation of the creditors generally to the property of Shadboldt & Morse? Plaintiff insists that the matters to which we are about to call attention are immaterial and in no wise affect the question of jurisdiction. But they obtrude themselves upon our consideration not as affecting that question, but as to whether we should accord the relief sought—whether plaintiff is in a position to demand the writ as matter of right.

It appears that plaintiff had knowledge of the appointment of the receivers shortly after the order was made. For nearly a year it made no objection to the appointment and took no steps to call in question either its legality or expediency. With knowledge of the appointment and of the powers thereby conferred it must be charged with knowledge of the acts and proceedings of the receivers, and, having failed to oppose or in any way obstruct their action, as such, we must presume consent to and acquiescence therein. Plaintiff, in

its brief, says that it does not challenge the good faith or good conduct of the receivers, nor their management, nor business ability. "The fact," says plaintiff, "that the lumber cannot be sold now without being sold at a loss in order to satisfy petitioner's execution, does not furnish light, but only levity, upon the question, and the only question in this proceeding involved, i. e., the jurisdiction of the superior court of Lassen county to appoint the receivers." Plaintiff seems to be obsessed with the thought that where a receiver has been appointed in an action at law, no state of circumstances whatever to which it has itself contributed, can ever make prohibition the remedy to nullify the appointment—other than a writ of right, granted *ex debito justitiae*, leaving no discretion with the court. Under circumstances where irreparable injury is resulting from the unauthorized appointment of a receiver and the injury is a continuing one, and there is no plain, speedy or adequate remedy at law, and the writ is sought seasonably, the court should not regard itself as clothed with discretion, but should treat prohibition as a writ of right. Such was the case of *Havemeyer* v. *Superior Court,* 84 Cal. 327, [18 Am. St. Rep. 192, 24 Pac. 121], where the appointment was stoutly resisted before it was made and its annulment was sought immediately after it issued. In the case giving rise to the writ the receiver was not appointed so much for the purpose of management and control of the defendant's property and to preserve it for the stockholders and creditors as it was, avowedly, by way of punishment and to so scatter and dissipate the property as to make its further operation as a sugar refinery impossible. In speaking of the writ of prohibition as an appropriate remedy for the removal of a receiver appointed by a void order, when the writ is directed to the court appointing him, the court said in the Havemeyer case: "If its action is not completed and ended, its further proceedings may be stayed, and if necessary for the purpose of affording complete and adequate relief, what has been done will be undone." Such is not the case here, for there is no showing made that it is "necessary for the purpose of affording complete and adequate relief" that the acts done should be undone. The receivers in the case here were appointed, admittedly, for the very opposite purpose avowed in the Havemeyer case, and, concededly, have faithfully man-

aged the debtors' property. For nearly a year, without question from plaintiff or any other creditor, they have conducted the debtors' business of manufacturing and selling lumber to the best advantage for the creditors; they have paid numerous preferred labor claims; collected outstanding accounts due the debtors; sold lumber, paid expenses and have the business now about closed up, with lumber piled at the railroad track (the Western Pacific) ready for shipment to market as soon as traffic on that road opens, sufficient, as respondent shows, to nearly if not quite pay all creditors in full. Plaintiff avers that the property exceeds the debts by over $3,000. To annul and declare void the receivership, after this lapse of time of unquestioned administration, upon the theory, now urged by plaintiff, that it has no validity, and that all acts done under it are void, for the sole purpose of enabling plaintiff by its executions to take possession of and sell the remaining property at a time and under conditions which would in all probability lead to a sacrifice of much of its real value, we think would be unconscionable. Furthermore, it is not to be supposed that the other creditors would sit idly by and witness the successful conclusion of plaintiff's efforts, should the writ issue, but would at once resort to the bankrupt court, which would be followed by a receivership not more promising than the one now in operation. Inevitably, litigation would ensue growing out of alleged illegal acts of the receivers and the wreck of the debtors' assets may well be conceived as the ultimate outcome. The writ of prohibition is classed among legal remedies, but there are points of similarity between the remedy thus afforded and the remedy of courts of equity by injunction against proceedings at law. Being an extraordinary remedy, the writ should not be made the instrument of injustice or oppression or reckless waste of property which it is its office to conserve and protect. Whether or not plaintiff's acquiescence and long delay in challenging the validity of the appointment and the proceedings under it amount to a technical estoppel of which the creditors may avail themselves, we think the facts justify us in refusing aid through the extraordinary remedy of prohibition.

There are other inequitable features of plaintiff's conduct which, though plaintiff contends they are superfluous and immaterial, if not impertinently thrust into the case, we cannot

disregard. Plaintiff took out an ordinary execution on its judgment of foreclosure, sold the mortgaged property under the writ, and bid in the property for $500 and caused a deficiency judgment to be entered for $1,903.49. It later had an order of sale issue in the foreclosure proceeding and sold the same property, itself again becoming the purchaser, for the sum of $2,496. It afterward sold the same property for $2,500, a fact not material except to show that plaintiff got full value for its purchase. It now seeks to have execution enforced not only for its Placer county judgment, but the deficiency judgment of $1,903.49. It cannot be pretended that this is just or fair, but it is contended that it may legally be worked out, and must be, because the writ must issue as of right invalidating the appointment of the receiver. After plaintiff had found its levy of its execution on the Placer county judgment ineffective, because the property levied upon was in the custody of the court through the receivers, it appeared in the action of *Crowder* v. *Shadboldt & Morse* by motion challenging the validity of the appointment made by the court and demanding its annulment. This motion is still pending. *Non constat* but it may be granted and plaintiff thus obtain the relief by the motion prayed for. It is suggested as improbable that it will be granted, and, as there is no appeal from an order refusing to discharge a receiver, the pending motion will furnish no such speedy, plain or adequate remedy as is contemplated by section 1103, Code of Civil Procedure. Let this be granted. There was, however, a plain, speedy and adequate remedy open to plaintiff when the receivers were applied for or when they were appointed, by intervening as a creditor and making itself a party to the action, thus placing itself in the position to appeal from the order of appointment, from which there is an appeal. (Code Civ. Proc., sec. 963.) Plaintiff makes no explanation of its failure or neglect to avail itself of this remedy. Its conduct in this particular, hereinbefore commented upon, would seem to indicate that it held aloof in the belief that the appointment of receivers would be to the advantage of all concerned, itself included, reserving to itself the right at any time to have the proceedings annulled. But, whatever its motive, it had knowledge of the appointment before the receivers had entered actively upon their duties or had taken any steps not

easily retraced without causing the embarrassments and complications which must inevitably ensue should the writ now be granted.

It may not be amiss to note that the trial court has in possession a sum sufficient to discharge the Placer county judgment, and to be used for that purpose, paid in by the receivers under order of the court, subject only to the condition that it should finally be determined that "the bank is entitled thereto." The bank refused its consent to this order and subsequently attempted to levy upon this money in satisfaction of its said deficiency judgment.

The case thus stands in this situation. So far as we know, all the creditors save plaintiff virtually came into the proceedings and plaintiff, by its consent and acquiescence, placed itself in like attitude, which it maintained for almost a year. After much business had been transacted and the affairs of the debtors closed up to a point where little remains to be done, plaintiff comes in, ignoring its long acquiescence, and would destroy equality and accomplish partiality by the overthrow of everything done on reliance of its implied consent. It seems to us that the maxim, "He who seeks equity must do equity," finds appropriate application.

Counsel for respondent have moved the court to strike the brief of petitioner from the files for its alleged "disrespectful and contemptuous references to and insinuations against the superior court of Lassen county and the judge thereof," which, it is claimed, also constitute contempt of this court. The supreme court has held that a brief filed in that court containing matter manifestly disrespectful toward the trial judge is to be deemed contempt of the appellate court. (*Friedlander* v. *Sumner G. & S. M. Co.*, 61 Cal. 116; *Sears* v. *Starbird*, 75 Cal. 91, [7 Am. St. Rep. 123, 16 Pac. 531].)

In their brief counsel for plaintiff, referring to the order of the court directing the receivers to deposit certain money as conditional security for plaintiff's Placer county judgment, spoke of the procedure as without "precedent in judicial annals; it is an original creation of the Lassen county court. It is *opera bouffe.*" Again, a portion of respondents' answer is referred to as "a gratuitous recitation of a tale of woe that might elicit sympathy somewhere, somehow, sometime, save in a court of justice." Again, the answer is referred to

as containing a "galaxy of grievances" and as "an imposition upon the patience and credulity of a court." Again, "the appointment of the receivers by that court and the tenacious retention of the custody of the defendants' property by the court and the administration of it by and through the receivers, seems, to put it mildly, a most covetous and wholly unwarranted usurpation of power." Upon his admission to the bar every person is required by law to take an oath to "faithfully discharge the duties of an attorney and counselor" (Code Civ. Proc., sec. 278); and among such duties the statute prescribes the following: "To maintain the respect due to the courts of justice and judicial officers." (Code Civ. Proc., sec. 282.) Recalling the fact that when the present judge of the Lassen county court took office in January, 1909, he found the receivership in operation and was, with plaintiff's acquiescence, called upon from time to time, without objection from anyone, to direct the receivers in the discharge of their duties for many months; and when it is recalled that plaintiff, with full knowledge of the proceedings, undertook to levy execution on property in the hands of the receivers without notice to or permission of the court, it becomes apparent that the references made by counsel to the action of the court are gratuitous and are without the slightest warrant or justification. Under the circumstances, to say that the action of the court was "a most covetous and wholly unwarranted usurpation of power," and to characterize it also as "*opera bouffe,*" we regard as highly disrespectful to the court and the judge, and but for the apparently frank disavowal of any intention to be disrespectful and the expressions by counsel of sincere respect for the trial judge, we should feel disinclined to treat the offense as venial. We, however, felt ourselves compelled to take notice of the matter that counsel might not assume this court to be indifferent to the observance of the amenities and courtesies which should characterize the conduct of both bench and bar toward each other.

The writ is denied.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 29, 1910.