[Civ. No. 2683.   Third Appellate District.—April 1, 1924.]

## GEORGE TOURNY et al., Respondents, v. LOUIS A. BRYAN et al., Appellants.

[1] Deeds of Trust—Extension of Time of Payment—Evidence—Findings.—In an action upon a promissory note and to foreclose under a deed of trust given to secure the payment thereof, where the evidence is sharply conflicting as to whether or not the payee of the note gave the makers any extension of time of payment beyond a given date, the finding of the trial court that a further extension of time beyond that date was not given is conclusive on appeal.

[2] Id.—Default in Payment of Interest—Option to Declare Principal Due—Reasonable Time.—The note having provided that in case the interest "is not paid within ten days after the same becomes due, the whole of said principal sum shall forthwith become due and payable, at the election of the holder of this note," the payee had a reasonable time after default in which to exercise such option; and, under the circumstances in this case, fifty-two days was not an unreasonable time in which to make the election.

[3] Id.—Mismanagement of Property by Receiver—Liability of Plaintiffs.—Except under special circumstances, such as an unauthorized appointment, the parties procuring the appointment of a receiver to take charge of property the subject matter of a

---

1.  See 2 Cal. Jur. 921; 2 R. C. L. 204.

2.  See 19 Cal. Jur. 904; 3 R. C. L. 1214.

·3.  Right of action for appointment of receiver wrongfully procured, note, **Ann. Cas.** 1915D, 1040. See, also, 23 **R. C. L.** 45.

foreclosure proceeding are not liable for his mismanagement of the property.

[4] ID. — APPOINTMENT OF RECEIVER — COLLATERAL ATTACK — SUFFICIENCY OF COMPLAINT.—On appeal from the judgment in favor of the plaintiffs in an action upon a promissory note and to foreclose a deed of trust upon certain property given to secure the payment thereof, an attack upon the order appointing a receiver to take charge of the property is a collateral attack; and, as against such attack, the allegations in the complaint that "there are now standing and growing upon the said lands and premises valuable crops. That the said crops are about to mature, and will thereupon be severed and removed from the said lands and premises" by the defendants (the grantors in the deed of trust) "or their successors in interest, and unless a receiver be appointed herein, will be discharged from the operation of said deed of trust and become wholly lost to the plaintiffs," are sufficient to justify the appointment of a receiver.

[5] ID.—ACQUIESCENCE IN APPOINTMENT—INFERENCE.—Where the defendants in such action did not ask the court to vacate the order of appointment of the receiver or in any manner question the regularity thereof or the authority of the receiver at any time prior to the trial, which was commenced more than four years after the appointment, such conduct justifies the inference that they acquiesced in the appointment.

[6] ID. — MANAGEMENT OF PROPERTY — SUFFICIENCY OF RETURNS — OBJECTION TO ACCOUNTS.—Where the actual management of the property, other than the collection of rents, remained in the hands of defendants, the objection by them to the settlement of the accounts of the receiver that he did not so manage the property as to produce as great returns as could have been secured was not tenable.

(1) 4 **C. J.**, p. 883, sec. 2855.   (2) 27 **Cyc.**, p. 1533.   (3) 27 **Cyc.**, p. 1630 (1926 Anno.).   (4) 27 **Cyc.**, p. 1628.   (5) 27 **Cyc.**, p. 1630. (6) 27 **Cyc.**, p. 1631 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Yuba County and from an order settling the accounts of the receiver. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

William E. Davies and Russell W. Cantrell for Appellants.

W. H. Carlin and Goodfellow, Eells, Moore & Orrick for Respondents.

FINCH, P. J.—The defendants have appealed from the judgment entered against them herein adjudging the amount

due from them on their promissory note and directing the plaintiffs, as trustees under defendants' deed of trust given to secure such indebtedness, to sell the property therein described for the purpose of satisfying the indebtedness. They also gave notice of appeal "from the order and decree . . . settling the account of the receiver herein." The pleadings, findings, and decree cover nearly 700 folios and, by reason of their length, it is necessary to state the issues material to the questions raised by the appeal in a somewhat disconnected manner.

August 28, 1916, the defendants executed their promissory note to the German Savings and Loan Society, hereinafter called the bank, for $90,000, payable three and a half years after date, with interest at seven per cent per annum, payable semiannually, and if not so paid to be added to the principal. The note provided that "in case said interest, or any part thereof, is not paid within ten days after the same becomes due, the whole of said principal sum shall forthwith become due and payable, at the election of the holder of this note."

At the same time, and as a part of the same transaction, the defendants executed and delivered to plaintiffs the aforesaid deed of trust, conveying to the latter 1,728 acres of land and 1,729 shares of stock of the Hallwood Irrigation Company. The deed of trust provided that the defendants should pay "all taxes and assessments and all other charges and encumbrances which now are or shall hereafter be . . . a lien upon the said premises"; that in default thereof the bank might make such payments and that the deed of trust should stand as security for the repayment, on demand, of any amounts so paid. The trustees were authorized to sell the property on defendants' default "in the payment of the said promissory note, or the principal or interest or any part thereof" or in the payment of any other moneys agreed to be paid by them; to obtain the aid and direction of the court in the execution of their trust; "and either by themselves or by a receiver to be appointed by a court therefor, to enter upon and take possession of the above granted premises, or any part thereof, . . . and to collect and receive the rents, issues and profits thereof . . . and to exercise such other powers in respect to said premises as the court in which said suit is pending may direct."

[1] February 24, 1917, defendant L. A. Bryan wrote the bank that he would be unable to pay the first installment of interest at the time it became due, February 28, 1917. The bank, on March 4th, granted an extension of time to June 15, 1917, for the payment of this installment of interest "on condition that you will provide for the payment of the water assessment of $844.50, which will be delinquent on the 16th inst., and which must be taken care of in all events by you by that time, and the receipts for same promptly mailed to us for our inspection." Defendants were unable to pay either the water assessment or the interest within the extension of time given and the bank granted a further extension to August 28, 1917. The evidence is sharply conflicting as to whether there was any further extension of the time of payment and the court's finding against defendants is conclusive on this appeal.

September 29, 1917, Bryan mailed money orders to the amount of $250 to the bank with the following direction: "Please pass to the credit of my loan account." This was the first and only tender of payment on the note or for moneys advanced by the bank. The bank received the money orders on the 30th of September, but the amount thereof was not applied to the defendants' indebtedness until November 1st. Plaintiff Tourny, vice-president and general manager of the bank, testified: "I had a conversation with Mr. Bryan on or about the first day of November in respect to the $250 payment mailed by him to the bank. The remittance had been made but had not been applied for the reason that we did not wish to accept an account payment, and we never do when we know there is any question of foreclosing, and I told Mr. Bryan we would return the money, but instead of that he requested us to apply it and that is why I wrote him this letter. And I told Mr. Bryan that these moneys had not been applied and he said that notwithstanding the fact that a suit has been commenced you can credit that on my account and it was in accordance with that statement that the payment was then credited to his account."

The complaint herein was filed October 24, 1917. On the same day the court appointed C. L. Smith, a farmer and banker, and apparently a disinterested person, receiver "to go upon the lands and premises in plaintiffs' complaint

herein described and to take possession of, receive, hold and preserve subject to the further orders of this court in the premises, all rents, issues, profits and crops growing or being thereon and belonging to the said defendants . . . and to do any and all such other acts and things in the premises as may be or become necessary to hold and preserve the said premises, including said rent, issues, profits and crops referred to in and secured by said trust deed.'' The receiver was required to give a bond in the sum of $5,000. The court found upon ample evidence that ''the receiver has at no time gone upon said premises, except for the purpose of collecting rents, issues and profits thereof, . . . and at all times the said defendants . . . have remained in possession of said premises and have made and executed all leases in respect to the same.'' Bryan testified that about the 1st of November, 1917, Tourny ''said if I could pay up the payments of the back interest he would dismiss the suit, and the receiver would be discharged.'' The case was not brought to trial until February 7, 1922, and hence it does not appear that any advantage was taken of defendants' necessities by hasty action.

[2] It is contended that the bank waived its option to declare the whole indebtedness due ''by waiting until the expiration of fifty-two days after default in the payment of the second installment of interest thereunder, and after it had received and retained a payment of $250 on account of over-due interest.'' The bank had a reasonable time after default in which to exercise such option. It has been held that fifty-nine days is not an unreasonable time in which to make the election. (*Fletcher* v. *Dennison,* 101 Cal. 292 [35 Pac. 868]. See, also, *Kinsel* v. *Ballou,* 151 Cal. 754 [91 Pac. 620]; *Hewitt* v. *Dean,* 91 Cal. 5 [27 Pac. 423].) ''Waiver always rests upon intent.'' (*Alden* v. *Mayfield,* 164 Cal. 6 [127 Pac. 45]; *Wienke* v. *Smith,* 179 Cal. 220 [176 Pac. 42].) The court found that ''the bank did not actually credit said $250 received by it on the thirtieth day of September, 1917, for the reason that it then intended to request the commencement of legal proceedings on said deed of trust.'' It cannot be said that the evidence does not support such finding.

[3] Appellants urge that the receiver was the agent of the plaintiffs and that therefore they are liable for the al-

leged mismanagement of the property by him as set up by
the defendants.  As before stated, the court found on suffi-
cient evidence that the receiver did not take over the man-
agement of the property further than to collect the rents,
thereof, and there is no claim of mismanagement in the
collection and application of the rents, but had there been
mismanagement on the part of the receiver, respondents
would not be liable therefor.  In support of their conten-
tion, appellants cite *Atlantic Trust Co.* v. *Chapman,* 208
U. S. 360 [13 Ann. Cas. 1155, 52 L. Ed. 528, 28 Sup. Ct.
Rep. 406, see, also, Rose's U. S. Notes].  In that case the
court said: ''Whether a receiver should have been appointed
or not was in the sound discretion of the court.  Immediately
upon such appointment and after the qualification of the
receiver, the property passed into the custody of the law,
and thenceforward its administration was wholly under the
control of the court by its officer or creature, the receiver.
In *Booth* v. *Clark,* 17 How. (U. S.) 322, 331 [15 L. Ed.
164, 167, see, also, Rose's U. S. Notes], it is said: 'A re-
ceiver is an indifferent person between parties, appointed
by the court to receive the rents, issues, or profits of land,
or other thing in question in this court, pending the suit,
where it does not seem reasonable to the court that either
party should do it. . . . He is appointed in behalf of all
parties, and not of the complainant or of the defendant
only. . . . It is the court itself which has the care of the
property in dispute.' ''  It was held that the party pro-
curing the appointment of a receiver does not become re-
sponsible for his management of property entrusted to him
as such, except under special circumstances, such as an un-
authorized appointment, citing *Ephraim* v. *Pacific Bank,*
129 Cal. 589, 592 [62 Pac. 177, 178], where it is said that·
if the receiver ''has taken property into his custody under
an irregular, unauthorized appointment, he must look for
his compensation to the parties at whose instance he was
appointed, and the same rule applies if the property of
which he takes possession is determined to belong to persons
who are not parties to the action, and is taken from his
possession by paramount authority.  As to such property
his appointment as receiver was unauthorized and conferred
upon him no right to charge it with any expenses.''

Appellants, however, contend that the appointment of the receiver was unauthorized and that therefore the respondents are answerable for his conduct in the management of the property. In appellants' reply brief it is said: "It is elementary that a receiver can be appointed by the court only under the provisions of section 564 of the Code of Civil Procedure, and not by consent of the parties. . . . There appears in the complaint no sufficient allegation . . . to authorize, or justify, the appointment of the receiver." *Baker* v. *Varney*, 129 Cal. 564 [79 Am. St. Rep. 140, 62 Pac. 100], and *Bank of Woodland* v. *Stephens*, 144 Cal. 659 [79 Pac. 379], are cited in support of the propositions stated. In the former case, which was an appeal from the judgment, the court said that the receiver was not appointed under section 564, "but the authority to appoint a receiver was based entirely upon a stipulation in the mortgage itself. . . . Where a court has no authority under the law to appoint a receiver, such authority cannot be conferred by consent or stipulation of the parties. . . . We do not think that the appellant is precluded from making this point upon the ground that it is a collateral attack. Upon the record the order appointing a receiver must be considered as based solely upon the stipulation of the parties in the mortgage, and is therefore void." In the latter case it is held that an allegation in the complaint that "the mortgaged premises are insufficient to pay and discharge the mortgage debt" states "no more than a conclusion." The court said: "Allegations of this character may be sufficient to uphold an order where the attack is collateral, but this cannot be allowed where, as in this case, there is a direct attack upon appeal." **[4]** In the instant case the petition for the appointment of a receiver alleges: "That there are now standing and growing upon the said lands and premises valuable crops. That the said crops are about to mature, and will thereupon be severed and removed from the said lands and premises by the said Louis A. Bryan and Winifred A. Bryan, or their successors in interest, and unless a receiver be appointed herein, will be discharged from the operation of said deed of trust and become wholly lost to the plaintiffs." The attack here made is collateral. The order appointing the receiver was appealable. (Code Civ. Proc., sec. 963.) No appeal was taken therefrom. On

an appeal from a judgment the court is without authority "to review any decision or order from which an appeal might have been taken." (Code Civ. Proc., sec. 956; *Bohn* v. *Bohn,* 164 Cal. 532 [129 Pac. 981].) Whatever might be said if the attack were direct, the foregoing allegations in the petition for the appointment of a receiver are certainly sufficient against the collateral attack here made. [5] The defendants did not ask the court to vacate the order of appointment or in any manner question the regularity thereof or the authority of the receiver at any time prior to the trial, which was commenced more than four years after the appointment. Such conduct justifies the inference that they acquiesced in the appointment. (*First National Bank* v. *Superior Court,* 12 Cal. App. 335, 344 [107 Pac. 322].)

[6] The only objection urged to the settlement of the receiver's account is that he did not so manage the property as to produce as great returns as could have been secured. Since the management of the property, other than the collection of rents, of which no complaint is made, was in the hands of the defendants, the objection made to the account is not tenable.

Other grounds urged for a reversal are based upon the erroneous theory that the receiver was the agent of the bank and, hence, no further consideration need be given them.

The judgment and the order are affirmed.

Plummer, J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 29, 1924.