Filed 8/20/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>LUIS RAMIREZ,<br><br>    Defendant and Respondent. | G063224<br><br>(Super. Ct. No. 22CF2282)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Elizabeth G. Macias, Judge. Reversed and remanded with directions.

Todd Spitzer, District Attorney, Austin Deuel and Mina Said, Deputy District Attorneys, for Plaintiff and Appellant.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Respondent.

\*         \*         \*

Under the Fourth Amendment to the United States Constitution, "once a vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to exit the vehicle without any articulable justification." (*People v. Hoyos* (2007) 41 Cal.4th 872, 893 (*Hoyos*), citing *Pennsylvania v. Mimms* (1977) 434 U.S. 106, 111, fn. 6 (*Mimms*).)

Here, two police officers were on routine patrol when they stopped a car for a traffic violation. Officer Travis Booth approached the car on the driver's side. Officer James Driscoll approached on the passenger side. About three minutes into the stop, Booth ordered the driver, Luis Ramirez, out of his car. As Ramirez was being removed from the car, Driscoll saw a handgun just behind the driver's seat.

Ramirez filed a motion to suppress the evidence. At a hearing on the motion, Officer Booth said he removed Ramirez from the car because he saw a bulge at Ramirez's waistband, and he thought he may have been armed. The trial court granted the motion because there was no "change in circumstances" regarding the officers' safety between the beginning of the stop and the point at which Ramirez was removed from his car. The Orange County District Attorney (the district attorney) appeals.

We have reviewed the video from the two officers' body-worn cameras, which were admitted into evidence at the hearing on the motion. Viewed objectively, we see no violations of the Fourth Amendment. Officer Booth was permitted to order Ramirez "to exit the vehicle without any articulable justification." (See *Hoyos*, *supra*, 41 Cal.4th at p. 893.) Therefore, we reverse the dismissal order and remand the matter to the trial court with directions to deny Ramirez's motion to suppress evidence.

But before we more fully discuss the search and seizure issues, there is another issue we need to address in this opinion: the respect

attorneys owe to trial court judges when challenging their rulings on appeal.

"It is the duty of an attorney to do all of the following: [¶] (a) To support the Constitution and laws of the United States and of this state. [¶] (b) To maintain *the respect due* to the courts of justice and judicial officers." (Bus. & Prof. Code, § 6068, subds. (a)–(b).) We note that the current oath taken by every attorney on admission to practice law to includes the following promise: "'As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity.'" (Cal. Rules of Court, rule 9.7.)

It is also a long-standing rule that an appellate brief "containing matter manifestly disrespectful toward the trial judge is to be deemed contempt of the appellate court." (*First Nat. Bank v. Superior Court* (1909) 12 Cal.App. 335, 348.)

In the appellant's opening brief, the district attorney argued: "The trial court here has *fabricated* a new requirement to vehicle detentions, and has done so *in defiance* of United States and California Supreme Court precedent." (Italics added.) And in the reply brief, the district attorney argued, in part: "This *fabricated* legal theory was untenable as the justification for granting the suppression motion, and likewise cannot justify the denial of the instant appeal." (Italics added.)

At oral argument, the district attorney's deputy (not the author of the briefs) was challenged about the propriety of using the word "fabricated" when referring to the trial court's ruling. The deputy theorized that the "purport" of his colleague's written argument was that the trial court's ruling "was inconsistent with or contrary to established precedent." When pressed further, the deputy went on to say, "I'm certain that we didn't intend to suggest that the court had bad faith in making its ruling."

According to Merriam-Webster, the verb "fabricate" has

3

essentially two meanings, one of which implies bad faith, and the other does not: 1) "to make up for the purpose of deception" as in "accused of *fabricating* evidence"; or 2) "to construct from [usually] standardized parts." (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 447, col. 1.)

We accept the representation of the district attorney (through his deputy) that he did not *intend* to suggest that the trial court had acted in bad faith when making its ruling. Indeed, the prosecutor who appeared at the hearing on the motion (and authored the appellate briefs) was gracious and respectful to the trial court judge. However, the written assertions in the district attorney's briefs that the trial court "fabricated" a legal theory are nonetheless subject to misinterpretation and are unacceptable.

We advise the district attorney in the future to be more cautious and consider his language more carefully when challenging a ruling of a trial court in an appellate brief, or he may be subject to sanctions. Words are to lawyers, as scalpels are to surgeons. They are tools to be used with precision.

I.

FACTS AND PROCEDURAL HISTORY

On August 1, 2022, at about 10:45 p.m., Santa Ana Police Officers Booth and Driscoll were in a patrol vehicle when Booth observed a white car fail to make a complete stop at a stop sign.

Booth initiated a traffic stop and approached the car on the driver's side. Booth contacted Ramirez, who was the driver and sole occupant. Driscoll approached on the passenger side and pointed a flashlight at Ramirez. Both officers recorded the encounter using body-worn cameras.

Booth asked Ramirez, "Do you have your driver's license on you?" Ramirez said, "I did stop." Booth said, "You didn't stop." After further dialogue, Booth told Ramirez he could argue about it in court if he got a

ticket. Ramirez said, "I'm not on probation or parole." Booth responded, "I haven't asked you any of those questions. I asked for your ID." Ramirez was holding a phone and Booth said, "Keep your hands on the steering and calm down." Booth told Ramirez, "You can film all you want."

At about one minute into the stop, Ramirez handed Booth his driver's license. Booth then returned to his patrol vehicle and ran a records check. Meanwhile, Driscoll kept his flashlight on Ramirez, who was speaking into his phone. Driscoll asked Ramirez, "Why are you so shaky?" Ramirez said, "I hate cops man. I don't like when they, when they question me . . . 'cause I used to be on parole.'" Driscoll asked, "What were you on parole for?" Ramirez said, "For assault with a deadly weapon." Driscoll asked Ramirez, "And you're staying clean?" Ramirez responded that he was. Driscoll said, "That's good. Nothing illegal in the vehicle?" Ramirez said, "No. There shouldn't be anything in the car and I don't consent to a search."

At about three minutes into the stop, Booth returned to the car and asked Ramirez to put both hands on top of his head. Ramirez said, "But uh, I'm not on probation or parole." Booth responded, "That doesn't matter." Ramirez said, "I got my rights." Booth told Ramirez "this is a lawful traffic stop and you're detained. And we have the right to remove you from the vehicle." Booth repeatedly told Ramirez to put his hands on his head and his phone on the dash. Ramirez asked, "Can you just get [the phone]?" Booth said, "No. I'm not going to take your property from you. . . . You need to put both hands on the top of your head and set your phone down."

At about four minutes into the stop, Ramirez set his phone on the dash. Booth told him, "Put your hands on top of your head. If you follow my instructions, this is gonna go much smoother. . . . Give me your left hand. Keep your right hand on the back of your head and step out of the car." When

Ramirez was out of the car, Booth said, "You're not under arrest, you're just being detained, okay? It has nothing to do with your probation status or anything like that, alright?" Booth moved him a couple of steps away.

As Ramirez was being removed from the car, Driscoll looked through the rear window and saw a handgun tucked into a pouch on the back of the driver's seat. Driscoll announced the radio code for a handgun. Booth put handcuffs on Ramirez and did a patdown search, discovering a plastic handgun holster in Ramirez's waistband. The firearm seen by Driscoll was later recovered from Ramirez's car, along with some cocaine.

The District Attorney filed an information charging Ramirez with possession of a controlled substance with a firearm, and possession of a firearm by a felon.

Ramirez filed a motion to suppress the evidence, arguing the "search, and seizure of his person and property was without a warrant and unreasonable under the Fourth Amendment to the United States Constitution." The trial court granted Ramirez's motion following an evidentiary hearing (the hearing is covered in detail in the discussion section of this opinion). The trial court dismissed Ramirez's case because the prosecution stated it was unable to proceed without the excluded evidence.

The district attorney filed a notice of appeal from the order of dismissal. (See Pen. Code, § 1238, subd. (a)(8)[1]; *People v. Gazali* (1991) 228 Cal.App.3d 1417, 1420–1422 [if a trial court grants a defendant's motion to suppress evidence and dismisses the case based on the prosecution's inability to proceed, the order or judgment of dismissal is appealable].)

---

[1] All further undesignated statutory references are to the Penal Code.

II.

DISCUSSION

The district attorney argues the trial "court erred when it concluded that there was a violation of the Fourth Amendment." (Boldface & capitalization omitted.) We agree.

An appellate court's review of a motion to suppress is a mixed question of fact and law. (*People v. Alvarez* (1996) 14 Cal.4th 155, 182-185.) "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

In this discussion we will: A) review the relevant principles of law; B) summarize the hearing on the motion to suppress evidence; and C) analyze the facts as applied to the relevant principles of law.

*A. Relevant Principles of Law*

"The right of the people to be secure in their persons, houses, papers and effects, against *unreasonable* searches and seizures, shall not be violated . . . ." (U.S. Const., 4th Amend., italics added.) A "search" is a governmental intrusion into an area where a person has a reasonable expectation of privacy. (See *Katz v. United States* (1967) 389 U.S. 347, 350.) A "seizure" is either a governmental taking of a person's property, or a governmental limitation on a person's freedom of movement. (See *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 618.)

Police may temporarily detain (seize) a person without a warrant when they have a reasonable suspicion of criminal activity. (*Terry* v. *Ohio*

7

(1968) 392 U.S. 1, 10 (*Terry*).) An officer with a reasonable suspicion that a motorist has violated the Vehicle Code may stop the vehicle for a brief investigation. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926.) Generally, people have a privacy interest against unreasonable searches and seizures; however, it is also well established that in light of the pervasive regulation of vehicles, people also have a reduced expectation of privacy while driving on public roadways. (*In re Arturo D.* (2002) 27 Cal.4th 60, 68, overruled on another point in *People v. Lopez* (2019) 8 Cal.5th 353, 381.)

A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. (*Rodriguez v. United States* (2015) 575 U.S. 348, 355.) "Beyond determining whether to issue a traffic ticket, an officer's mission" during a traffic stop typically "includes . . . checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (*Ibid.*) "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [citation] *and attend to related safety concerns . . . .*" (*Id.* at p. 354, italics added.) "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (*Ibid.*)

In the landmark *Mimms* case, police stopped a vehicle with an expired license plate. (*Mimms, supra*, U.S. 434 at p. 107.) An officer asked the driver to get out of the car, and when the driver complied, "the officer noticed a large bulge under [the driver's] sports jacket. Fearing that the bulge might be a weapon, the officer frisked [the driver] and discovered in his waistband a .38-caliber revolver loaded with five rounds of ammunition." (*Ibid.*) The Supreme Court held (1) it was reasonable for the officer to order the driver

8

out of the vehicle, and (2) it was reasonable for the officer to conduct a brief pat down search for a weapon based on the officer's suspicion that the driver "might be armed and presently dangerous." (*Id.* at p. 112.)

In *Mimms*, the United States Supreme Court announced a definitive rule that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." (*Mimms*, *supra*, 434 U.S. at p. 111, fn. 6.) The Court reasoned that the government's "legitimate and weighty" interest in officer safety outweighs the "de minimus" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. (*Id.* at pp. 110–111; see also *Maryland v. Wilson* (1997) 519 U.S. 408, 410 [the well-established rule "that a police officer may *as a matter of course* order the driver of a lawfully stopped car to exit his vehicle" was extended to passengers], italics added.)

Generally, the Fourth Amendment requires an officer to obtain a warrant before executing a search, but when an "inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search'" within the meaning of the Fourth Amendment. (*Illinois v. Andreas* (1983) 463 U.S. 765, 771.) "The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." (*Ibid.*)

"Although a routine traffic stop would rarely justify a police officer in drawing a gun or using handcuffs, such actions may be appropriate when the stop is of someone suspected of committing a felony." (*People v. Celis* (2004) 33 Cal.4th 667, 676.) "A person is guilty of carrying a concealed

firearm when the person does any of the following: [¶] (1) Carries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person." (§ 25400, subd. (a)(1).)

## B. *The Motion to Suppress Evidence*

At the hearing on the motion to suppress evidence, Officer Booth testified he was on routine patrol with Officer Driscoll when he saw Ramirez's car fail to "come to a complete stop behind limit line of the stop sign." Booth then pulled over Ramirez's car in an area claimed by a criminal street gang. Booth said at this time the area "had seen an uptick" in gang activity, to include "violence, firearm possession, narcotics possession, and sales." Booth said when he went to his vehicle and ran the records check on Ramirez, he could not recall if he ran a check for his criminal history, but he determined Ramirez's license was valid.

The prosecutor asked Booth what he did when he returned to Ramirez's vehicle. Booth responded: "At some point during the stop, I observed a bulge underneath a baggy T-shirt that he was wearing. So due to [that] reason and the concern of the potential of him being armed, he was removed from the vehicle." Booth further explained the bulge was at Ramirez's waistband, and it was visible to him while he was having a conversation with Ramirez at the driver's side window (Booth did not say precisely when he saw the bulge in Ramirez's waistband).

Booth testified that after Ramirez was out of his car, Booth then moved him a couple of steps away "in order to place him in handcuffs." Booth said he sometimes handcuffs suspects when he does a patdown search. When asked why, he said: "Officer safety, the first concern is, you know, if there is a weapon there, the opportunity to be able to retrieve it in the process of the

10

pat-down, the handcuffs prevent that and it is safer for everybody."

Booth said, "While I was removing him from the vehicle, I was notified by my partner that there was a firearm in the backseat." Booth said this occurred prior to the time Ramirez was handcuffed. Booth then handcuffed Ramirez, did a patdown search, and discovered the plastic handgun holster at Ramirez's waistband.

Booth estimated the traffic stop took about three to five minutes from the time Ramirez's car came to a stop, to the time Driscoll announced there was a gun in Ramirez's car. Booth testified the typical timeframe for a traffic stop (making the stop, running a records check, and writing a citation) was: "More than ten minutes."

After hearing further testimony from Officer Driscoll, watching the two videos, and listening to counsel's arguments, the trial court ruled:

"The Court of Appeal may very well tell me that I am wrong. I don't know. I don't know that there would be grounds for this to go up on appeal. But the reality is that there is an inherent danger in the interpretation of *Mimms* that permits officers to at any moment during a traffic stop to pull a defendant out when there are these set of facts. And the set of facts that I am referring to is: It was nighttime. It was a dangerous neighborhood. There was an uptick in crime. And this defendant was clearly agitated and not following instructions.

"The officer with those set of facts, did not pull the defendant out. The officer further testified that that bulge in the waistband had been observed, and given the inference from the officer's testimony, that he did not share that information with Officer Driscoll before going to do the records check. It is a fair inference to find that Officer Booth had observed that bulge in the waistband before going to do the records check. And yet, he left Officer

11

Driscoll on his own with only his flashlight drawn and pointed in the direction of the defendant. The officer conducts the records check, finds nothing . . . , returns to then have the defendant step outside of the vehicle.

"While counsel argues that perhaps the change in circumstances would have been the exchange between the defendant and Officer Driscoll, it is not part of the facts before the Court that Officer Booth heard this exchange between the defendant and Officer Driscoll. . . . [¶] The Court finds that under these set of facts, the motion to suppress is granted."

The prosecutor asked for clarification: "So the Court is finding it constitutionally unreasonable to remove a defendant from the car after a few minutes have passed in the traffic stop if there is no change in circumstances to the safety of the officers between the beginning of the stop and that later removal. [¶] Is that a fair characterization?" The trial court said: "When the officer's position is that it is officer safety, yes." The prosecutor responded, "Thank you, Your Honor."[2]

C. *Analysis And Application*

"The touchstone of the Fourth Amendment is reasonableness." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250.) "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are *unreasonable*." (*Ibid.*, italics added.) When analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard." (*Terry, supra,* 392 U.S. at pp. 21–22.) As a consequence, the Fourth Amendment "allows certain actions to

---

[2]Again, we note that the prosecutor who represented the People at the hearing on the suppression motion was at all times gracious and respectful to the trial court judge. This was the same deputy district attorney who authored the appellate briefs.

be taken in certain circumstances" by police officers, "*whatever* the subjective intent." (*Whren v. United States* (1996) 517 U.S. 806, 807.)

The California Supreme Court has interpreted *Mimms* to mean "that once a vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to exit the vehicle *without any articulable justification.*" (*Hoyos, supra,* 41 Cal.4th 893, italics added.) In *Hoyos,* an officer stopped a car because its rear license plate light was out. (*Id.* at pp. 879–880.) The driver then handed the officer an identification card, rather than a driver's license. The officer returned to his patrol car, performed a records check and determined the driver did not have a valid driver's license. The officer began to write a citation and called for backup. When another officer arrived, the police ordered the driver and the passenger (defendant) out of the car. Shortly thereafter, police found a loaded firearm in the car, which was ultimately connected to two capital murders committed by the driver and defendant earlier that evening. (*Id.* at p. 880.)

On direct appeal, defendant argued (1) he was unlawfully ordered out of the car and/or (2) he was unlawfully detained in the time period after he was ordered out of the car and before the firearm was discovered because "there existed no reasonable, articulable suspicion of criminal activity to justify his detention." (*Hoyos, supra,* 41 Cal.4th at p. 892.) The Supreme Court disagreed: "Defendant's first contention fails because an officer making a traffic stop may, without violating the Fourth Amendment, order the driver and passengers to exit a car." (*Ibid.*) As far as defendant's second contention, "we conclude that defendant's detention during this time period was lawful as a brief continuation of [the] detention for officer safety." (*Id.* at p. 893.)

Here, the facts of the traffic stop, and the analysis of the Fourth Amendment issues are similar to those in *Hoyos, supra,* 41 Cal.4th 872.

13

Officer Booth's initial stop of the car was justified because Booth said he saw Ramirez fail to make a complete stop, which is a violation of the Vehicle Code.[3] As a consequence of the traffic stop, Booth was further justified in approaching Ramirez's car, obtaining his driver's license, and running the records check by using the computer in his patrol vehicle.

When Booth returned to Ramirez's car at about three minutes into the stop, he ordered Ramirez to put down his phone, put his hands on his head, and exit the car. The Fourth Amendment requires no justification to order a driver out of a vehicle. After about a minute, Ramirez complied. Although this court would additionally find Booth was justified in ordering Ramirez out of the car for officer safety reasons (to conduct a patdown search to investigate the bulge in Ramirez's waistband), Booth did not need to justify his reasons for ordering Ramirez out of the vehicle. (See *Mimms*, *supra*, 434 U.S. at p. 111, fn. 6; see also *Hoyos*, *supra*, 41 Cal.4th at p. 893.)

At this point, the mission of the traffic stop was not yet complete (dealing with the traffic violation and attending to officer safety concerns), so it would have been reasonable for Booth to briefly detain Ramirez outside of the car. (See *Hoyos*, *supra*, 41 Cal.4th at p. 893 ["we conclude that defendant's detention during this time period was lawful as a brief continuation of [the] detention for officer safety"].)

However, just a few seconds after Ramirez exited the car (about four minutes into the stop), Officer Driscoll alerted Booth that there was a firearm in the car based on his plain view observation through a passenger side window. (*Illinois v. Andreas, supra,* 463 U.S. at p. 771.) At that point,

---

[3]"The driver . . . approaching a stop sign at. . . an intersection shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection."  (Veh. Code, § 22450, subd. (a).)

the officers objectively had probable cause to believe Ramirez was committing a felony by having a firearm concealed in the vehicle. (See § 25400, subd. (a)(1).) Indeed, it does not appear to be disputed that the officers' subsequent search and seizure actions (i.e., the handcuffing, the pat down search, the search of the vehicle, the eventual arrest) were all reasonable under the Fourth Amendment. (See *People v. Celis, supra,* 33 Cal.4th at p. 676.)

In sum, we find Ramirez's Fourth Amendment right to be free from unreasonable seizures or searches was not violated at any point during the traffic stop. Thus, we reverse the ruling of the trial court, which was a dismissal of Ramirez's criminal charges following the granting of his motion to suppress the evidence.

Ramirez argues the *Hoyos* case is distinguishable because "the facts are not similar." (See *Hoyos*, *supra*, 41 Cal.4th 893.) Ramirez contends: "In *Hoyos*, the officer did not immediately order the defendant out of the car, but returned to his car and began writing a citation. [Citation.] When another officer arrived they ordered the defendant and his passenger out of the car. The arrival of the second officer was a dramatic change in circumstances and waiting for his arrival was certainly consistent with the goal of officer safety. In the instant case, there was no change in circumstances." We disagree.

It appears that at least one more officer arrived on the scene while Booth was seated in the car and conducting the records check. From the vantage point of Booth's body-worn camera, another police vehicle can be seen coming into view while Booth is doing the records check. And just after Booth got out of his patrol vehicle, he is then approached by another police officer (not Driscoll). The presence of an additional police officer may explain why Booth made the decision to have Ramirez exit the vehicle at this point (rather than earlier in the encounter), but it really does not matter. As stated

15

by our Supreme Court, "once a vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to exit the vehicle without any articulable justification." (*Hoyos, supra,* 41 Cal.4th at p. 893.)

Ramirez also argues "the particular invasion of respondent's security was not reasonable and would appear to be a pretext." But Booth's intent or motives for his actions—even if they were pretextual—are irrelevant. As the United Sates Supreme Court has explicitly held, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (*Scott v. United States* (1978) 436 U.S. 128, 138.) That is, challenged searches and seizures under the Fourth Amendment are ordinarily analyzed "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (*Ibid.*)

Ramirez argues: "The reasonable course of action upon returning to respondent's vehicle would have been to either issue a citation or give respondent a warning and tell him to have a nice evening. The court saw through the smoke and mirrors and suppressed the evidence." We disagree.

Long standing Fourth Amendment precedents "permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.)

When asked what he did when he returned to the vehicle after

16

running the records check, Booth testified at the hearing: "At some point during the stop, I observed a bulge underneath a baggy T-shirt that he was wearing." The trial court did not seem to question Booth's veracity. Indeed, the court stated: "It was nighttime. It was a dangerous neighborhood. There was an uptick in crime. And this defendant was clearly agitated and not following instructions." In short, based on all of the objective circumstances, we find Booth reasonably suspected Ramirez may have been armed and dangerous. Booth therefore also reasonably determined that he needed to do a patdown search of Ramirez outside of the vehicle in order to either confirm or dispel his suspicions.

Finally, Ramirez also argues "he was physically removed from the car in an at least undignified if not painful manner, handcuffed and patted down . . . all after the fact." However, to the extent that Ramirez may be arguing that Officer Booth used excessive force, this argument has been forfeited because Ramirez has not cited any relevant legal authority to support this claim, nor has he developed a cogent legal argument. (See, e.g., *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1410 ["A legal contention stated as a bare assertion without supporting authority is forfeited"].)

To reiterate and conclude, we find: the initial traffic stop of Ramirez's car was lawful based on an observed traffic violation; Officer Booth did not need any additional justification to order Ramirez out of the vehicle; ordering Ramirez out of the vehicle did not unreasonably prolong the traffic stop; and once Officer Driscoll saw the firearm in the vehicle, all subsequent search and seizure actions, including the handcuffing, patdown search, and eventual arrest of Ramirez, were all objectively reasonable under long established United States Supreme Court precedents.

17

### III.

### DISPOSITION

The dismissal order is reversed. The matter is remanded to the trial court with directions to deny Ramirez's motion to suppress evidence.


                                    MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


GOODING, J.